**Affirm and Opinion Filed August 26, 2013**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

## No. 05-11-01112-CV

**ALEXANDREA CRUTCHER, Appellant**
**V.**
**DALLAS INDEPENDENT SCHOOL DISTRICT, Appellee**

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 10-06253**

## OPINION

Before Justices FitzGerald, Fillmore, and Evans
Opinion by Justice FitzGerald

Following an adverse employment decision, Alexandrea Crutcher sued Dallas Independent School District ("DISD") for retaliation. The trial court granted summary judgment in favor of DISD. On appeal, Crutcher identifies eight issues that can be generally described as a challenge to the trial court's judgment.[1] Concluding Crutcher's arguments are without merit, we affirm the trial court's judgment.

---

[1] Specifically, Crutcher contends: "(1) the trial court erred in granting summary judgment, (2) the trial court erred in granting summary judgment because [she] set forth clear evidence of a causal connection between Defendant extending an offer of employment to [her] and then, withdrawing the offer, (3) the trial court erred in concluding that [she] failed to set forth evidence of a causal connection between her filing an employment discrimination claim and [DISD's] so-called hiring freeze because shortly thereafter, it offered the position to another candidate, (4) the trial court erred in granting summary judgment because [she] produced uncontroverted circumstantial evidence of a causal connection that [DISD] retaliated against [her] by retracting her job offer because of [her] prior successful lawsuit against [DISD], (5) the trial court erred in granting summary judgment because [she] set forth clear evidence of a causal connection between [DISD's] decision not to recommend her for hire and the protected activity in which she engaged, (6) the trial court erred in granting summary judgment because [she] set forth clear evidence of a causal connection between [DISD's] false claims that it failed to post the job pursuant to the District's policies and procedures and interviewing and offering [her] said job, (7) the trial court erred in granting summary judgment because there was conflicting evidence regarding every reason for the failure to hire, and (8) the trial court erred in granting summary judgment because [she] established the persons involved were unworthy of credence."

## BACKGROUND

Crutcher was once employed by DISD. In August 2004, after she was no longer employed by DISD, Crutcher filed a lawsuit against the district in federal court alleging discrimination and retaliation (the "2004 Lawsuit"). The 2004 Lawsuit was settled out of court.

In the summer of 2009, Crutcher interviewed for a position as a basketball coach and science teacher with DISD. The job for which Crutcher interviewed was at Moises E. Molina High School. Crutcher first interviewed with the school's athletic director. Her second interview was with the school principal, Dorothy Gomez. After the interview, Gomez submitted a form to the DISD Human Resources Department (the "HR Department") and recommended that Crutcher be hired. Crutcher then had a third interview with Bethany Knighten, the head of the science department. Gomez also joined in at the conclusion of the third interview. Knighten initially supported the hiring of Crutcher, but withdrew her support after speaking with one of Crutcher's former colleagues.

Delorise Gay is a staffing manager with the HR Department. Gay received the form from Gomez recommending that Crucher be hired, but rejected the recommendation because the position for which Crutcher had interviewed had not been properly posted in accordance with DISD policy.

Three days after Gomez recommended Crutcher, the position was actually posted. Crutcher did not apply for the posted position. DISD ultimately selected an applicant who could teach special education and coach basketball. The school did not hire a new science teacher for that school year.

Crutcher initiated this suit against DISD alleging retaliation. After some discovery, DISD moved for a traditional and no-evidence summary judgment on Crutcher's retaliation claim.

Crutcher responded to the motion. The trial court granted DISD's motion for summary judgment and dismissed "all of [Crutcher's] claims with prejudice." Crutcher timely perfected this appeal.

## ANALYSIS

### *Standard of Review*

DISD moved for a traditional and a no-evidence summary judgment. *See* TEX. R. CIV. P. 166a(c), (i). In a traditional summary judgment, the party moving for summary judgment has the burden to establish that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). If the movant satisfies its burden, the burden shifts to the nonmovant to preclude summary judgment by presenting evidence that raises a genuine issue of material fact. *Affordable Motor Co., Inc. v. LNA, LLC*, 351 S.W.3d 515, 519 (Tex. App.—Dallas 2011, pet. denied).

A party seeking a no-evidence motion for summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claim on which the nonmovant would have the burden of proof. *See* TEX. R. CIV. P. 166a(i). Once the nonmovant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. *See id.*; *Sw. Elect. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). We review a no-evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). Our inquiry focuses on whether the nonmovant produced more than a scintilla of evidence to raise a fact issue on the challenged elements. *Id.* at 751. Evidence is more than a scintilla if it is so weak as to do no more that create mere surmise or suspicion of a fact. *Id.*

We review the trial court's summary judgment decision de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In doing so, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Nixon*, 690 S.W.2d at 548–49.

Our review is limited to consideration of the evidence presented to the trial court. *Mathis v. Restoration Builders, Inc.,* 231 S.W.3d 47, 52 (Tex. App.—Houston [14th Dist.] 2007, no pet.). When, as here, a summary judgment does not state or specify the grounds upon which it relies, we may affirm the judgment if any of the grounds presented in the summary judgment motion are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 556 (Tex. App.—San Antonio 2011, no pet.).

### Did Crutcher Establish a Prima Facie Case of Retaliation?

Crutcher brought her claim for retaliation under the Texas Commission on Human Rights Act (TCHRA). *See* TEX. LAB. CODE ANN. §§ 21.001–.556 (West 2006 & 2012 Supp.). The TCHRA "is a comprehensive fair employment practices act and remedial scheme, modeled after Title VII of the federal Civil Rights Act of 1964 (Title VII) that provides the framework for employment discrimination claims in Texas." *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 502–03 (Tex. 2012); *Jesperson v. Sweetwater Ranch Apts.*, 390 S.W.3d 644, 653 (Tex. App.—Dallas 2012, no pet.). "The TCHRA was enacted to address the specific evil of discrimination and retaliation in the workplace, as well as to coordinate and conform with federal anti-discrimination and retaliation laws under Title VII." *City of Waco v. Lopez*, 259 S.W.3d 147, 153–55 (Tex. 2008). Although we consider the TCHRA's plain language and state precedent in interpreting the statute, we also look to federal law for interpretive guidance to meet the legislative mandate that the Act is intended to "provide for the execution of the policies of Title

VII . . . and its subsequent amendments." *See* TEX. LAB. CODE ANN. § 21.001(1) (West Supp. 2012); *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 476 (Tex. 2001).

With regard to retaliation, the TCHRA provides that "[a]n employer . . . commits an unlawful employment practice if the employer . . . retaliates or discriminates against a person who, under this chapter: 1) opposes a discriminatory practice; 2) makes or files a charge; 3) files a complaint; or 4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." TEX. LAB. CODE ANN. § 21.055.

While a retaliation claim may be proved through direct or circumstantial evidence, most employers do not expressly state a retaliatory purpose for their actions. *See Jones v. Overnite Transp. Co.*, 212 Fed. App'x. 268, 272–73 (5th Cir. 2006). In the absence of direct evidence of discrimination, the employee must make out a prima facie case of discrimination under the *McDonnell Douglas* burden shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973); *Jesperson*, 390 S.W.3d at 654. To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between the filing of the claim and the adverse action. *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67–68, (2006); *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004).

The scope of the retaliation provision is not limited to conduct that constitutes "ultimate employment decisions"; rather, the provision "extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington Ne. & Santa Fe Ry. Co.*, 548 U.S. at 67. Nevertheless, the retaliation provision does not protect an individual from all retaliation, but from actions that a reasonable employee would have found materially adverse. *Id.* at 67–68. "Material" employer actions are those "that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Id*. at 68. This objective standard is

applied to a fact-specific inquiry "because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69. The standard is tied to the challenged retaliatory act, not to the underlying conduct that forms the basis of the complaint. *Id.*

If a plaintiff meets his burden to establish a prima facie case of retaliation, the burden shifts to the defendant to demonstrate a legitimate, non-discriminatory purpose for the adverse employment action. *Pineda*, 360 F.3d at 487. The plaintiff then assumes the burden to present proof that the stated reason was pretextual. *Gonzalez v. Champion Techs., Inc.*, 384 S.W.3d 462, 466 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "To carry this burden, the plaintiff must rebut each non-discriminatory or nonretaliatory reason articulated by the employer." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

It is undisputed that Crutcher's filing of the 2004 Lawsuit was a protected activity and an adverse employment action occurred when DISD declined to hire her in 2009. The issue here is whether Crutcher established a causal connection between the protected activity and the adverse employment action so as to establish a prima facie case of retaliation.

Crutcher's complaints about the causal connection, expressed as issues two through six, include the following contentions: (1) DISD extended and then withdrew an offer of employment for "conflicting and unbelievable reasons," (2) DISD offered the position to another candidate, (3) DISD retracted the job offer because of the 2004 Lawsuit, and (4) DISD's claim that the position was not posted in accordance with district policies and procedures was false. In her seventh issue, Crutcher also generally asserts she established that "the persons involved were unworthy of credence."

Crutcher does not rely on direct evidence of retaliation. Therefore, we examine the circumstantial evidence of the alleged causal connection between the protected activity and the adverse employment decision.

Circumstantial evidence sufficient to show a causal link between an adverse employment decision and the filing of a discrimination charge or suit may include (1) the employer's failure to follow its usual policy and procedures in carrying out the challenged employment actions; (2) discriminatory treatment in comparison to similarly situated employees; (3) knowledge of the discrimination charge or suit by those making the adverse employment decision; (4) evidence that the stated reason for the adverse employment decision was false; and (5) the temporal proximity between the employee's conduct and discharge. *Cf. Green v. Lowe's Home Ctrs, Inc.*, 199 S.W.3d 514, 519 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (discussing factors in context of termination of employment). To satisfy the causation requirement for a prima facie case of retaliation, a plaintiff must establish that without the protected activity, the employer's prohibited conduct would not have occurred when it did. *See Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995); *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 823 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). In other words, the plaintiff must establish a "but for" causal nexus between her protected activity and the employer's prohibited conduct. *Tex. Natural Res. Conservation Comm'n v. McDill*, 914 S.W.2d 718, 723 (Tex. App.—Austin 1996, no writ).

In the instant case, the evidence regarding DISD's knowledge of the 2004 Lawsuit does not establish a causal connection between the adverse employment decision and the protected activity. The individual in the HR Department who received the recommendation to hire Crutcher testified that she was not aware of the 2004 Lawsuit. And Crutcher's own contentions defeat any inference that Gomez's decision to withdraw her recommendation was premised on

Crutcher having filed the 2004 Lawsuit. Crutcher claims she told Gomez about the 2004 Lawsuit during her second interview. Gomez informed Crutcher that she was recommending her for hire after her third interview. Gomez then submitted a recommendation for hire to the HR Department, but later retracted the recommendation. On these facts, it is not reasonable to infer that the 2004 Lawsuit is causally connected to DISD's decision not to extend Crutcher an offer of employment. Crutcher was invited for a third interview and Gomez recommended her for hire after she disclosed the 2004 Lawsuit. There is no evidence of a causal connection between the retraction of the recommendation and ultimate employment decision and the 2004 Lawsuit.

Gomez's affidavit stated that she interviewed Crutcher for a science/basketball coaching position in 2009. Although she recommended Crutcher for the science position when she completed the recommendation form, she failed to include the basketball coaching position. When the HR Department contacted Gomez, she was informed that there was a hiring freeze except as to coaching positions. Gomez informed HR that there was an error on the form, and the position was attached to coaching.

Subsequently, on July 14, 2009, Gomez received an email from the HR Department stating that the recommendation could not be validated because HR had never received Gomez's request that the position be posted. That same day, Knighton contacted Gomez to inform her that the science instructional team no longer supported Crutcher's recommendation. On July 14, and again on July 16, 2009, Gomez emailed the HR Department and stated that she wished to withdraw her recommendation of Crutcher. Gomez further testified, and the summary judgment evidence reflects, that she submitted a request to post the science/basketball coach position on July 15, 2009.

Gomez stated that her decision to withdraw the recommendation was based on the withdrawal of support from her instructional team. According to Gomez, Crutcher provided no

information about the 2004 Lawsuit during the interview process, and Gomez was not even aware of the 2004 Lawsuit until Crutcher filed the EEOC complaint that forms the basis of this lawsuit.

Knighten's affidavit is also included in the summary judgment evidence. Knighten stated that she participated in Crutcher's interview on July 13, 2009. Gomez was also present. Although Crutcher's resume indicated she had previously worked for the school, she did not mention her prior employment during the interview. Knighten thought that was strange. At the conclusion of the interview, Knighten told Gomez she supported hiring Crutcher for the science department.

Knighten testified that she subsequently contacted a colleague in the science department to inquire about Crutcher's previous employment at the school. Her colleague informed her that Crutcher left the school due to accusations that she had been found having sexual intercourse with a male colleague in a supply closet on school premises. Based on the conversation with her colleague, Knighten did not believe Crutcher would be a good fit for the department. Consequently, she contacted Gomez and withdrew her support for Crutcher's recommendation.

Knighten further testified that the withdrawal of her support for Crutcher was based on the allegations of sexual misconduct, not on the prior lawsuit. Knighten stated that she has no knowledge of, and has heard no rumors about the prior lawsuit between Crutcher and DISD.

Gay, the staffing manager who receives and processes all hiring recommendations for the DISD area in which the school is located, also testified that she had no knowledge of the 2004 Lawsuit. Gay stated that she did not investigate Crutcher, but even if she had, information about a prior lawsuit against DISD would not be included in the records to which she had access.

Gay stated that she received a teacher recommendation form from Gomez. The form recommended Crutcher for employment in a science position. Gay contacted Gomez to advise

that there was a hiring freeze in effect for all positions except coaching. Gomez told her that she was also recommending Crutcher for a basketball coaching position.

That same day, Gay discovered that the position had not been posted in accordance with district policy. Gay advised Gomez that she could not proceed with the hiring of Crutcher until the position had been posted and Gomez had reviewed all of the resumes that were submitted. As a result, Gay rejected Gomez's recommendation of Crutcher.

On July 14 and 16, Gay received emails from Gomez withdrawing her recommendation of Crutcher. On July 15, Gomez sent Gay a request to post the science/basketball coach position. The basketball coach position was posted on July 16, 2009. Gay did not receive a letter of interest or resume from Crutcher. After complying with DISD policy on the hiring process, an individual was hired to fill the basketball coach position. No one was hired to fill the science/basketball coach position.

Gay stated that her decision to reject the recommendation of Crutcher had nothing to do with the filing of a prior lawsuit against the district. Instead, the reason for her rejection was the failure to properly post the position in accordance with DISD policy. The record reflects that records concerning the 2004 Lawsuit and underlying EEOC claim were not maintained in Crutcher's personnel file. Such records are kept in Employee Relations, the Office of Legal Services, or the Records Management Department.

According to Crutcher, she was first notified by the athletic director that there was a problem with her hiring, but he provided her with no details. Crutcher then went to the HR Department and was told that there was a problem with her certification. When Crutcher said she was certified, HR then told her there was a hiring freeze. Crutcher claims she was then told to contact the school because the problem must have arisen there. Crutcher then spoke with the

–10–

athletic director, who informed her that she was not being hired and he had been given no explanation as to why.

Crutcher generally contends DISD's summary judgment evidence was not credible, and specifically argues that the request to post the science/basketball position is dated "1/26/09." While this date is included as part of the printed form, the top of the form is also dated "7/15/09," and the facsimile transmission information reflects that it was transmitted on July 15, 2009. Thus, despite the date that appears as part of the printed form, the evidence reflects that the form was actually filled out and transmitted on July 15, 2009, just as Gay and Gomez testified. On this record, the summary judgment evidence concerning DISD's knowledge of the 2004 Lawsuit does not establish the casual connection required to prove a prima facie case of retaliation.

The temporal proximity of the actions at issue also does not support a causal connection. Temporal proximity may be evidence of a causal connection only when a person with input into the employment decision was aware of the protected activity. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 320 (5th Cir. 2004); *Marsaglia v. Univ. of Tex., El Paso*, 22 S.W.3d 1, 5 (Tex. App.—El Paso 1999, pet. ref'd) (affirming summary judgment where evidence failed to show that decision-maker had any knowledge of appellant's protected activity). Here, all DISD employees involved in the process denied any knowledge of the 2004 Lawsuit. And even under Crutcher's version of events, she was recommended for hire after she disclosed the 2004 Lawsuit. Moreover, temporal proximity between a protected act and an adverse employment action may be evidence of a causal connection "when they are separated by weeks, as opposed to months or years." *Perry v. Univ. of Houston*, No. 01-08-00807-CV, 2009 WL 3152166, at *5 (Tex. App.—Houston [1st Dist.] Oct. 01, 2009, no pet.). In this instance, the protected act occurred in 2004 and the adverse employment decision in 2009. Therefore, there is not sufficient

proximity to support a causal connection between the 2004 Lawsuit and the decision not to hire Crutcher.

There is also no evidence to suggest that DISD failed to follow its ordinary policies and procedures or treated other similarly situated persons differently. To the contrary, the summary judgment evidence reflects that one of the reasons Crutcher was not hired was because the position for which she was initially recommended was not properly posted in accordance with district policy. Gay's affidavit explained that all vacant teaching positions must be posted for a minimum of ten school days. After the posting period and after the principal has reviewed all resumes and letters of interest, the principal submits a teacher recommendation form to the HR Department. The form is signed by both the principal and the candidate, and by signing the form the candidate acknowledges his or her understanding that it is only a recommendation for employment. An individual is not considered an employee until he or she completes the entire human resources hiring process.

DISD did not post the position for basketball coach until three days after Gomez submitted the form recommending Crutcher's hire. Therefore, the record reflects that at the time Crutcher interviewed at the school and Gomez recommended her, the position for which she interviewed had not been posted and was not available.

Having reviewed the summary judgment evidence, indulging every reasonable inference and resolving any doubts in favor of Crutcher, we conclude Crutcher failed to establish a causal connection between the 2004 Lawsuit and DISD's decision not to extend her an offer of employment. As a result, Crutcher failed to establish a prima facie case of retaliation.

***Was There a Legitimate, Nonretaliatory Reason For DISD's Actions?***

We have already concluded that Crutcher failed to prove a prima facie case of retaliation because the summary judgment evidence did not establish a causal link between Crutcher's

protected conduct and DISD's decision not to hire her. But even if Crutcher had established a prima facie case of retaliation and shifted the burden to DISD, DISD provided substantial evidence to show legitimate, nondiscriminatory reasons for its actions.

To raise a fact issue on the pretext element of a discrimination claim, the employee must present evidence proving the reasons stated by the employer were not its true reasons, but were a pretext for discrimination, or the reasons were not credible. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143 (2000); *Chandler*, 376 S.W.3d at 814. An employer is entitled to judgment as a matter of law if the record conclusively establishes some other, nondiscriminatory reason for the employer's decision, or if the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. *See Reeves*, 530 U.S. at 148. The issue at the pretext stage is not whether the employer made an erroneous decision; it is whether the decision, even if incorrect, was the real reason for the employment determination. *See Sandstad v. CB Richard Ellis, Inc*., 309 F. 3d 893, 899 (5th Cir. 2002); *Mayberry v. Vought Aircraft Co*., 55 F.3d 1086, 1091 (5th Cir. 1995). The employer "is entitled to be unreasonable so long as it does not act with discriminatory animus." *Sandstad,* 309 F.3d at 899. If the employee intends to show the explanation is so unreasonable it must be pretextual, it is the employee's burden to proffer evidence creating a fact issue regarding reasonableness. *Id.*

As previously discussed, the record reflects that Gomez's decision to withdraw her recommendation of Crutcher was based on the withdrawal of support from the science department. And Knighten withdrew her support for Crutcher based on the allegations of previous sexual misconduct and her determination that Crutcher would not be a good fit for the department. Ultimately, however, these recommendations and withdrawals were of little consequence because the position for which Crutcher had interviewed had not been properly

posted in accordance with DISD policy. Crutcher failed to raise a fact issue as to any of the non-retaliatory reasons for DISD's decision not to hire her. Although Crutcher complains that DISD's evidence concerning the posting of the position was false, she failed to produce any evidence to support this contention. Crutcher's generalized assertions do not raise a fact issue as to pretext. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004); *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997).

Therefore, even if Crutcher met her burden to establish a prima facie case of retaliation, the summary judgment evidence shows legitimate, non-retaliatory reasons for DISD's decision, and Crutcher failed to demonstrate that these reasons were merely pretextual. Under these circumstances, the trial court did not err in granting summary judgment. All of Crutcher's issues are overruled.

## III. CONCLUSION

Having resolved all of Crutcher's issues against her, we affirm the trial court's judgment.

111112F.P05

KERRY P. FITZGERALD
JUSTICE

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ALEXANDREA CRUTCHER, Appellant

No. 05-11-01112-CV      V.

DALLAS INDEPENDENT SCHOOL
DISTRICT, Appellee

On Appeal from the 298th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 10-06253.
Opinion delivered by Justice FitzGerald.
Justices Fillmore and Evans participating.

       In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

       It is **ORDERED** that appellee DALLAS INDEPENDENT SCHOOL DISTRICT recover
its costs of this appeal from appellant ALEXANDREA CRUTCHER.


Judgment entered this 26th day of August, 2013.


/Kerry P. FitzGerald/

KERRY P. FITZGERALD
JUSTICE